Matthew G. Monforton  (Montana Bar # 5245)
Monforton Law Offices, PLLC
32 Kelly Court
Bozeman, Montana 59718
Telephone:  (406) 570-2949
E-mail:       matthewmonforton@yahoo.com

Attorney for Plaintiffs

## UNITED STATES DISTRICT COURT
## DISTRICT OF MONTANA
## HELENA DIVISION

| | |
|---|---|
| RANDY PINOCCI, JEFFREY PATTISON, RONALD V. HEPP, | Case No. _____ |
| Plaintiffs, | **VERIFIED COMPLAINT** |
| v. | |
| MALCOLM "MACK" LONG, in his official capacity as Director of the Montana Department of Transportation, | |
| Defendant. | |

COMES NOW Plaintiffs Randy Pinocci, Jeffrey Pattison, and Ronald V. Hepp and allege the following:

## I. JURISDICTION AND VENUE

1.      This Court has subject-matter jurisdiction under 28 U.S.C. §§1331, 1343, 1367, and 42 U.S.C. § 1983, and the First and Fourteenth Amendments to the United States Constitution.

2.      Venue is proper in the Helena Division of the District of Montana. L.R. 3.2(b)(1)(C).

## PARTIES

3.      Plaintiff Randy Pinocci resides in Cascade County, Montana.

4.      Plaintiff Jeff Pattison resides in Valley County, Montana.

5.      Plaintiff Ronald V. Hepp resides in Missoula County, Montana.

6.      Plaintiffs are informed and believe, and upon such information and belief allege, that Defendant Malcolm Long resides in Lewis and Clark County, Montana.

7.      At all times pertinent to this action, Defendant Long has been the Director of the Montana Department of Transportation (DOT) and is sued in his official capacity only.

## FACTUAL ALLEGATIONS

### A.  Montana Law Governing Political Signs

8.      The Montana Outdoor Advertising Act, Mont. Code Ann. § 75-15-101, *et seq*., is a content-based statute that regulates the display of signs near highways and interstates.

9.       The Act permits landowners to display, without any durational limits, signs "advertising the sale or lease of property upon which they are located," as well as signs "advertising activities conducted on the property upon which they are located."  Mont. Code Ann. § 75-15-111(1)(b) & (c).

10. The Act authorizes DOT to adopt rules controlling the erection and maintenance of other outdoor advertising. Mont. Code Ann. § 75-15-121.

11. Per this provision, DOT has adopted rules allowing for the display – without durational limits – of signs providing the names and meeting times of churches, service clubs, and youth organizations, Mont. Admin. R. 18.6.241, as well as signs by nonprofit groups recognizing the name of a sponsor or benefactor. Mont. Admin. R. 18.6.248.

12. DOT has, however, imposed durational limits on signs "promoting political candidates or issues," Mont. Admin. R. 18.6.246(1) – such signs must be removed within 14 days after an election. Mont. Admin. R. 18.6.246(4).

13. Under Montana law, therefore, a landowner may display, for example, a "For Sale" sign anytime during the year for an unlimited duration but must remove all political signs within 14 days after an election.

14. Failure to timely remove a political sign subjects the landowner and the owner of the sign to administrative proceedings, entry upon the landowner's property by DOT personnel to physically remove the sign, and an assessment of costs resulting from the removal of the sign. Mont. Code Ann. § 75-15-131.

15. Failure by a landowner to timely remove a political sign also subjects the landowner and owner of the sign to criminal penalties. Mont. Code Ann. § 75-15-134.

**B. Harassment of Pinocci Supporters by DOT**

16.    Plaintiff Pinocci has served as one of the five members of Montana's Public Service Commission (PSC) since January 2019.

17.    Before that, Pinocci had campaigned several times for seats in the Montana Legislature.

18.    Pinocci campaigned in 2022 for re-election to the PSC.

19.    Pinocci's campaign in 2022 included the distribution of campaign signs with his name and likeness to supporters to display on their property.

20.    Pinocci distributed hundreds of signs during the 2022 campaign, either directly to supporters or through intermediaries such as Republican county central committees.

21.    One of Pinocci's supporters is Plaintiff Jeff Pattison, who resides in Glasgow, Montana.

22.    Sometime in April 2022, Pinocci obtained permission from Pattison to place a campaign sign on a vacant structure located on agricultural land owned by Pattison.

23.    The structure is about one mile east of Hinsdale, Montana, sits on a 160-acre plot of ground, and is about 116 feet from the edge of U.S. Highway 2, as shown in this photograph:



24.    Pattison's property is surrounded by irrigated agricultural land.

25.    Pinocci did not have an opponent in the general election in 2022 and won re-election with 97% of the vote.

26.    After the election, Pinocci asked Pattison and other supporters if they wanted him to remove the campaign signs from their property.

27.    Pattison and many other supporters declined Pinocci's offer.

28.    Instead, they continue to display Pinocci's signs on their property.

29.    They are doing so because they regard Pinocci as a hard-working public servant with a keen intellect and want to encourage him to run for higher office, such as the U.S. House of Representatives.

30.    They also want to display Pinocci signs to build support among their neighbors and others for a future Pinocci campaign.

31.    The DOT sent a letter dated March 7, 2023, to Pattison and sent a copy of the letter to Pinocci.

32.    A true and correct copy of the letter is attached as **Exhibit 1**.

33.    The letter informed Pattison that the Pinocci sign located "at or near milepost 510.5 in Phillips [*sic*] County is in violation of the provisions of the Montana Outdoor Advertising Act Part 1, Chapter 15, Title 75 Montana Codes Annotated (MCA)."

34.    Contrary to the DOT's assertion, the Pinocci sign displayed by Pattison is located in Valley County, not Phillips County.

35.    The letter also states that "Department personnel have identified a sign located on your property advertising a political candidate. Name of Candidate is Randy Pinnoci [*sic*] (Photo Attached)."

36.    The DOT also alleged in the letter that Pattison's sign is "prohibited because it does not meet the requirements of Section 18.6.246(3),[1] Administrative Rules of Montana, (ARM), which states in part that political signs must be removed within 14 days following the applicable election."

37.    The DOT concluded the letter with the following warning:

---

[1] The DOT got that part wrong, too. The durational limit for political signs is found in subsection (4) of Mont. Admin. R. 18.6.246, not subsection (3).

As provided by 75-15-131, MCA, this letter is your notice of the department's intention to remove the sign. You have 5-days to remove the sign. If the sign is not removed by you, the department will start the process of having the sign removed. The landowner and the sign owner are responsible for the costs of removal.

38.     The DOT sent an identical letter dated March 7, 2023, to a business in Malta that is displaying a Pinocci sign identical to the one displayed by Plaintiff Pattison.

39.     The DOT sent a copy of the letter to Plaintiff Pinocci. **(Exhibit 2).**

40.     Plaintiff Ronald V. Hepp has supported Pinocci's previous campaigns for public office.

41.     Hepp has either displayed or distributed to supporters at least 300 Pinocci signs during the past decade on behalf of Pinocci's previous campaigns for public office.

42.     Hepp resides on property adjacent to Montana Highway 83 about 7.5 miles south of Seeley Lake, Montana.

43.     Montana Highway 83 is part of Montana's "Primary System"[2] and therefore subject to the Montana Outdoor Advertising Act. Mont. Code Ann. § 75-15-103(11).

---

[2] See <https://mdt.mt.gov/other/webdata/external/planning/maps/hwymap-system.pdf>

44.     Montana Highway 83 is heavily traveled by Montanans, particularly during the summer months.

45.     Hepp desires to display a Pinocci sign on his residential property that would be within 100 feet of Highway 83 to encourage Pinocci to continue running for public office as well as to increase Pinocci's name recognition among passersby.

46.     Because of current Montana law governing displays of political signs, and because he is concerned about the harassment being inflicted by the DOT upon other Pinocci supporters, Hepp will not display a Pinocci sign on his residential property without injunctive relief from this Court.

## CAUSES OF ACTION

### First Cause of Action
### First Amendment to the United States Constitution: Freedom of Speech
### (42 U.S.C. § 1983)

47.     Plaintiffs reallege all matters set forth in the preceding paragraphs.

48.     Under the First Amendment, incorporated and made applicable to the states by the Fourteenth Amendment, a content-based law is presumptively unconstitutional and may be justified only if it satisfies strict scrutiny – *i.e.*, only if the government proves that it is narrowly tailored to serve a compelling state interest.  *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015).

49.     Thus, for example, a sign regulation is subject to strict scrutiny if it imposes restrictions on "ideological signs" that differ from those imposed upon "political signs" designed to influence the outcome of an election.  *Id.* at 170.

50.     Such a regulation "does not evade strict scrutiny review simply because an event (*i.e.*, an election) is involved."  *Id.* at 170.

51.     Montana's sign law allows landowners to display signs on their property that convey non-political messages, such as "For Sale" signs, without any durational limits.

52.     Montana's sign law imposes durational limits, however, on political signs displayed by landowners, requiring them to remove such signs within 14 days after an election.  Mont. Admin. R. 18.6.246(4).

53.     Montana's sign law is therefore content-based because the content of a sign's message determines whether or not it is subject to durational limits.

54.     Montana's durational limits on political signs are not narrowly tailored to achieve any compelling state interest.

55.     Montana's sign law is also vague, and "vagueness concerns are more acute when a law implicates First Amendment rights, and, therefore, vagueness scrutiny is more stringent."  *Butcher v. Knudsen*, 38 F.4th 1163, 1169 (9th Cir. 2022).

56.    Montana's sign law requires landowners to remove political signs within 14 days after an election.  Mont. Admin. R. 18.6.246(4).

57.    Montana's sign law does not inform landowners, however, as to when they may *begin* displaying political signs.

58.    Landowners must, therefore, "steer far wider of the unlawful zone than if the boundaries of the forbidden areas were clearly marked," *Butcher*, 38 F.4th at 1169, and refrain from displaying political signs until very close to Election Day.

59.    For all of these reasons, the durational limit imposed by Montana law upon political signs violates the First Amendment.

## Second Cause of Action
## Montana Constitution, Art. II, §7: Freedom of Speech

60.    Plaintiffs reallege all matters set forth in the preceding paragraphs.

61.    Like the First Amendment, Article II, §7, of the Montana Constitution protects freedom of speech: "[n]o law shall be passed impairing the freedom of speech or expression."

62.    The durational limit imposed by Montana law upon political signs violates Mont. Const. Art. II, §7 for the same reasons as it does the First Amendment.

## Third Cause of Action
## Fourteenth Amendment to the United States Constitution: Equal Protection
## (42 U.S.C. § 1983)

63.    Plaintiffs reallege and incorporate by reference each allegation set forth above.

64.    The Fourteenth Amendment to the United States Constitution guarantees all persons equal protection of the laws.

65.    Government classifications based on race or national origin, and classifications affecting fundamental rights, are given the most exacting scrutiny. *Clark v. Jeter*, 486 U.S. 456, 461 (1988); *A.C.L.U. of Nevada v. City of Las Vegas*, 466 F.3d 784, 801 (9th Cir. 2006).

66.    Plaintiffs have a fundamental right under the First Amendment to engage in speech about political issues.  *Eu v. San Francisco County Democratic Cent. Comm.*, 489 U.S. 214, 223 (1989) ("the First Amendment has its fullest and most urgent application to speech uttered during a campaign for political office" and "[f]ree discussion about candidates for public office is no less critical before a primary than before a general election."); *Police Dept. of Chicago v. Mosley*, 408 U.S. 92, 101 (1972) ("The Equal Protection Clause requires that statutes affecting First Amendment interests be narrowly tailored to their legitimate objectives.").

67.    Defendant classifies persons who own property adjacent to interstates and highways based on the content of signs that they display.

68.    Landowners who display "For Sale" signs; signs advertising activities conducted on their property; signs advertising cultural exhibits of nonprofit historical or arts organizations; signs giving the names and meeting times of churches, service clubs, and youth organizations; signs by a nonprofit recognizing the name of a sponsor or benefactor; and various other signs may do so without being constrained by any durational limits.

69.    Landowners who display signs with political messages, however, must remove them within 14 days after an election.

70.    These two groups of landowners are similarly situated other than for the content of the speech displayed on their signs, thereby subjecting Defendant's classification to strict scrutiny.

71.    Defendant's classification of landowners based upon the messages displayed on their signs is not narrowly tailored to achieve any compelling state interest and therefore violates Plaintiffs' right to equal protection.

**PRAYER FOR RELIEF**

Plaintiffs respectfully request the following relief from this Court concerning their causes of action:

- A judgment declaring that the durational limit imposed by Montana law upon political signs violates Plaintiffs' rights under the First Amendment, Fourteenth Amendment, and Mont. Const. Art. II, §7;

- A preliminary and permanent injunction restraining and enjoining Defendant and all of his officers, agents, servants, employees, and persons in active concert with any of them from enforcing durational limits on political signs.

- An award of reasonable attorneys' fees and costs;

- Any other relief to which Plaintiffs may be entitled.

Respectfully submitted,

DATED: March 28, 2023                    MONFORTON LAW OFFICES, P.C.

                                         /s/ Matthew G. Monforton
                                         Matthew Monforton
                                         Attorney for Plaintiffs

## VERIFICATION BY RANDY PINOCCI

I, Randy Pinocci, declare as follows:

    1. I am the Plaintiff in this matter.

    2. I have reviewed the attached Complaint and declare that the facts and allegations contained therein are true, except so far as they are stated to be on information, and that, so far as they are stated to be on information, I believe them to be true.

    I declare under penalty of perjury under the laws of the United States of America that the statements contained in this Verification are true and correct.

Executed on March 28, 2023, in Cascade, Montana.

Randy Pinocci

14

## VERIFICATION BY JEFF PATTISON

I, Jeff Pattison, declare as follows:

    1. I am the Plaintiff in this matter.

    2. I have reviewed the attached Complaint and declare that the facts and allegations contained therein are true, except so far as they are stated to be on information, and that, so far as they are stated to be on information, I believe them to be true.

    I declare under penalty of perjury under the laws of the United States of America that the statements contained in this Verification are true and correct.

Executed on March _28_, 2023, in _Glasgow_, Montana.

_Jeff Pattison_
Jeff Pattison

15

## VERIFICATION BY RONALD V. HEPP

I, Ronald V. Hepp, declare as follows:

1. I am the Plaintiff in this matter.

2. I have reviewed the attached Complaint and declare that the facts and allegations contained therein are true, except so far as they are stated to be on information, and that, so far as they are stated to be on information, I believe them to be true.

I declare under penalty of perjury under the laws of the United States of America that the statements contained in this Verification are true and correct.

Executed on March 28, 2023, in Seeley Lake, Montana.

Ronald V. Hepp

16