Matthew G. Monforton (Montana Bar # 5245)
Monforton Law Offices, PLLC
32 Kelly Court
Bozeman, Montana 59718
Telephone:  (406) 570-2949
E-mail:       matthewmonforton@yahoo.com

Attorney for Plaintiffs

**UNITED STATES DISTRICT COURT**

**DISTRICT OF MONTANA**

**HELENA DIVISION**

| | |
|---|---|
| RANDY PINOCCI, JEFFREY PATTISON, RONALD V. HEPP, | ) |
| | ) Case No. CV-23-0021-H-DLC |
| | ) |
| Plaintiffs, | ) **BRIEF IN SUPPORT OF** |
| v. | ) **PLAINTIFFS' MOTION FOR** |
| | ) **PRELIMINARY INJUNCTION** |
| MALCOLM "MACK" LONG, in his official | ) |
| capacity as Director of the Montana | ) |
| Department of Transportation, | ) |
| | ) |
| Defendant. | ) |
| | ) |

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ....................................................................... iii

INTRODUCTION .................................................................................. 1

STATEMENT OF FACTS ....................................................................... 4

ARGUMENT ........................................................................................ 8

I.   MONTANA'S DURATIONAL LIMIT ON POLITICAL SIGNS
     DOES NOT SATISFY STRICT SCRUTINY ................................................. 8

II.  MONTANA'S DURATIONAL LIMIT ON POLITICAL SIGNS
     IS UNCONSTITUTIONALLY VAGUE ....................................................... 12

III. MONTANA'S SIGN LAW DENIES EQUAL PROTECTION TO
     LANDOWNERS DISPLAYING POLITICAL SIGNS ................................ 14

IV.  PLAINTIFFS SATISFY THE *WINTER* REQUIREMENTS FOR A
     PRELIMINARY INJUNCTION..................................................................... 15

V.   PLAINTIFFS SHOULD NOT BE REQUIRED TO POST AN
     INJUNCTION BOND.................................................................................... 18

CONCLUSION........................................................................................ 19


EXHIBITS
Exhibit 1  ..............................................................Letter from DOT to Jeff Pattison
Exhibit 2  ................................................................ Letter from DOT to Ron Hepp

## <u>TABLE OF AUTHORITIES</u>

*ACLU of Nevada* v. *City of Las Vegas,*
    466 F.3d 784, 799 (9th Cir. 2006)............................................................. 13, 14

*Alliance for the Wild Rockies v. Cottrell,*
    632 F.3d 1127 (9th Cir. 2011)........................................................................ 16

*Associated Press v. Otter,*
    682 F.3d 821 (9th Cir. 2012)......................................................................... 18

*Beaulieu v. City of Alabaster,*
    454 F.3d 1219 (11th Cir. 2006)..................................................................... 10

*Bible Club v. Placentia-Yorba Linda Sch. Dist.,*
    573 F.Supp.2d 1291 (C.D. Cal 2008) ........................................................... 19

*Butcher v. Knudsen,*
    38 F.4th 1163 (9th Cir. 2022) ................................................................. 12-13

*California Chamber of Commerce v. Council for Educ. & Research on Toxins*
    29 F.4th 468 (9th Cir. 2022) .................................................................... 16-17

*Central Hudson Gas & Elec. Corp. v. Public Service Comm. of New York,*
    447 U.S. 557 (1980)......................................................................................... 1

*Central Radio Co. v. City of Norfolk,*
    811 F.3d 625 (4th Cir. 2016)......................................................................... 11

*Citizens United v. FEC,*
    558 U.S. 310 (2010)......................................................................................... 8

*Clark* v. *Jeter,*
    486 U.S. 456 (1988)....................................................................................... 14

*Elrod v. Burns,*
    427 U.S. 347 (1976)....................................................................................... 17

*Eu* v. *San Francisco County Democratic Cent. Comm.,*
    489 U.S. 214 (1989)....................................................................................... 14

*Flores v. Bennett,*
    2022 WL 9459604 (E.D. Cal. Oct 14, 2022) ................................................. 19

*Grayned v. City of Rockford*,
    408 U.S. 104 (1972) ...................................................................................... 13

*Joelner v. Washington Park*,
    378 F.3d 613 (7th Cir. 2004).......................................................................... 18

*Johnson v. Courturier*,
    572 F.3d 1067 (9th Cir. 2009)........................................................................ 18

*Jorgensen v. Cassiday*,
    320 F.3d 906 (9th Cir. 2003).......................................................................... 18

*Klein v. City of San Clemente*,
    584 F.3d 1196 (9th Cir. 2009)........................................................................ 17

*Marin v. Town of Southeast*,
    136 F.Supp.3d 548, 552 (S.D.N.Y. 2015)...................................................... 10

*Montana Citizens for Right to Work v. Mangan*, 580 F.Supp.3d 911
    (D. Mont. 2022) ............................................................................................. 14

*Myers v. Thompson*,
    192 F.Supp.3d 1129 (D. Mont. 2016) .............................................................. 4

*Paine Bldg. Dept. v. Dworken & Bernstein Co., L.P.A*,
    733 N.E.2d 1152 (Ohio 2000)....................................................................... 10

*Reed v. Town of Gilbert*,
    576 U.S. 155 (2015)............................................................................... *passim*

*Republican Party of Minnesota v. White*,
    536 U.S. 765 (2002)...................................................................................... 16

*Roy* v. *Barr*,
    960 F.3d 1175 (9th Cir. 2020)........................................................................ 14

*Sanders County Rep. Cent. Comm. v. Bullock,*
    698 F.3d 741 (9th Cir. 2012)..................................................... 1, 8, 17

*Thalheimer v. City of San Diego,*
    645 F.3d 1109 (9th Cir. 2011)........................................................... 4

*Union City Bd. of Zoning Appeals v. Justice Outdoor Displays, Inc.*
    467 S.E.2d 875 (Ga. 1996)............................................................ 10

*United Food and Commercial Worker Local 99 v. Brewer,*
    817 F.Supp.2d 1118, 1128 (D. Ariz. 2011).................................... 19

*United States v. Schiff,*
    379 F.3d 621 (9th Cir. 2004)........................................................... 1

*Willson v. City of Bel-Nor,*
    924 F.3d 995, 1001 (8th Cir. 2019)............................................... 11

*Whitton v. City of Gladstone,*
    54 F.3d 1400 (8th Cir. 1995)......................................................... 10

*Winter v. Natural Res. Def. Council, Inc.,*
    555 U.S. 7 (2008) ...................................................................15-16

MONTANA CODE ANNOTATED
    § 75-15-101 ..................................................................................... 3
    § 75-15-111 ................................................................................. 3, 11
    § 75-15-121 ..................................................................................... 3
    § 75-15-131 ..................................................................................... 4
    § 75-15-134 ..................................................................................... 4

## INTRODUCTION

Montana law allows citizens who own property adjacent to a highway or interstate to display, without any durational limits, signs conveying various messages. These include "For Sale" signs, signs advertising services sold on the property, signs by non-profit groups thanking their sponsors, and signs with various other messages. If a sign's message promotes a candidate or political issue, however, the sign must be removed within 14 days after an election.

Montana's sign law turns First Amendment jurisprudence on its head because "[c]ommercial speech traditionally has been granted less protection than political speech and expressive speech." *United States v. Schiff*, 379 F.3d 621, 626 (9th Cir. 2004), citing *Central Hudson Gas & Elec. Corp. v. Public Service Comm. of New York*, 447 U.S. 557, 562-63 (1980). By contrast, "political speech – including the endorsement of candidates for office – is at the core of speech protected by the First Amendment." *Sanders County Rep. Cent. Comm. v. Bullock*, 698 F.3d 741, 745 (9th Cir. 2012).

Under Montana law, signs selling property can be displayed indefinitely but signs selling political ideas or candidates are subject to strict durational limits. This makes Montana's sign law content-based and, therefore, subject to strict scrutiny by this Court. *Reed v. Town of Gilbert*, 576 U.S. 155, 171 (2015).

Montana's unconstitutional sign law is already impacting the 2024 election. Plaintiffs include two long-time supporters of Plaintiff Randy Pinocci, who was re-elected in November 2022 to a second term as a member of the Montana Public Service Commission (PSC). These supporters should not have to wait until 2024 to begin posting signs on their property in support of Pinocci. Sustained campaigning allows candidates and their supporters to build and maintain relationships with voters. By staying visible and engaging with voters, supporters of a candidate can demonstrate the candidate's viability, making it more likely that they will support the candidate when Election Day rolls around. Sustained campaigning can also help to build momentum and excitement around a candidate's message and platform. By continually promoting their candidate, supporters can inspire and recruit other supporters and mobilize them to act, whether it be by volunteering, donating, or simply spreading the word to their friends and family.

Pinocci's supporters have a constitutional right to display his signs on their property. Montana's Department of Transportation (DOT) is threatening them, however, with civil prosecution if they continue doing so. Plaintiffs are therefore entitled to relief from this Court.

## STATEMENT OF FACTS

The Montana Outdoor Advertising Act, Mont. Code Ann. § 75-15-101, *et seq*., regulates the display of signs near highways and interstates.  Landowners may display various types of signs indefinitely, such as "for sale" signs and signs advertising on-site activities, Mont. Code Ann. § 75-15-111(1)(b) & (c), signs providing the names and meeting times of churches, Mont. Code Ann. § 75-15-121; Mont. Admin. R. 18.6.241; and signs by nonprofit groups thanking a sponsor. Mont. Code Ann. § 75-15-121; Mont. Admin. R. 18.6.248.

DOT has imposed durational limits, however, on signs "promoting political candidates or issues."  Mont. Admin. R. 18.6.246(1).[1]  Political signs must be removed within 14 days after an election.  Mont. Admin. R. 18.6.246(4).  Failure

---

[1] Rule 18.6.246 states in pertinent part as follows:

(1) Signs promoting political candidates or issues shall be placed on private property only and cannot be placed without the permission of the property owner. Political signs must comply with sign standards found in 75-15-113, MCA, and ARM 18.6.231, unless otherwise specified in this rule.

(2) Political signs must not:

(a) be placed on or allow any portion to intrude in the public right-of-way or on public property; and

(b) be placed within 100 feet of any entrance to the building in which a polling place is located.

(3) Political signs will not be considered in determining the spacing required between conforming off-premises outdoor advertising signs.

(4) Political signs must be removed within 14 days following the applicable election. The department shall notify the landowner of illegal signs which are not removed within 14 days. The signs shall be removed by the department 24 hours after notification to the landowner. The department shall retain removed political signs for five working days after notification of removal before their destruction. The sign owner may retrieve the signs during this period.

to do so subjects the landowner and the owner of the sign to administrative proceedings, entry upon the landowner's property by DOT personnel to physically remove the sign, and an assessment of costs resulting from the removal of the sign. Mont. Code Ann. § 75-15-131.  Failure by a landowner to timely remove a political sign also subjects the landowner and owner of the sign to criminal penalties.  Mont. Code Ann. § 75-15-134.

## B. Harassment of Pinocci Supporters by DOT

Plaintiff Randy Pinocci campaigned several times for seats in the Montana Legislature during the prior decade.  Verified Complaint, ¶ 17.[2]  He was subsequently elected to Montana's Public Service Commission (PSC) in November 2018 and re-elected in November 2022.  *Id.,* ¶¶ 16, 25.  Pinocci's campaigns include the distribution of campaign signs with his name and likeness to supporters to display on their property.  *Id.,* ¶19.  He distributes hundreds of signs, either directly to supporters or through intermediaries such as Republican county central committees.  *Id.,* ¶ 20.

---

[2] Plaintiffs' Verified Complaint provides competent evidence to support their motion for preliminary injunction.  *Thalheimer v. City of San Diego*, 645 F.3d 1109, 1116 (9th Cir. 2011) ("A verified complaint may be treated as an affidavit, and, as such, it is evidence that may support injunctive relief"), *overruled on other grounds Bd. of Trustees of Glazing Health & Welfare Tr. v. Chambers*, 941 F.3d 1195 (9th Cir. 2019); *Myers v. Thompson*, 192 F.Supp.3d 1129, 1138 (D. Mont. 2016) (stating that the plaintiff's "verified complaint is treated as an affidavit, and thus may be used as evidence to support an injunction").

One of Pinocci's supporters is Plaintiff Jeff Pattison, who resides in

Glasgow, Montana. *Id.,* ¶ 21.   Sometime in April 2022, Pinocci obtained

permission to place a campaign sign on a vacant structure located on agricultural

land owned by Pattison. *Id.,* ¶ 22.  The structure is about one mile east of

Hinsdale, Montana, sits on a 160-acre plot of ground, and is 116 feet from the edge

of U.S. Highway 2. *Id.,* ¶ 23.  Pattison's property is surrounded by irrigated

agricultural land. *Id.,* ¶ 24.

After being re-elected in November 2022, Pinocci asked Pattison and other

supporters if they wanted him to remove his campaign signs from their property.

*Id.,* ¶ 26.  Pattison and many other supporters declined Pinocci's offer. *Id.,* ¶ 27.

Instead, they continue to display Pinocci's signs on their property. *Id.,* ¶ 28.  They

are doing so because they regard Pinocci as a hard-working public servant with a

keen intellect and want to encourage him to run for higher office, such as the U.S.

House of Representatives. *Id.,* ¶ 29.  They also want to display Pinocci signs to

build support among their neighbors and others for a future Pinocci campaign. *Id.,*

¶ 30.

The DOT sent a letter dated March 7, 2023, to Pattison as well as a copy of

the letter to Pinocci. *Id.,* ¶ 31.  A true and correct copy of the letter is attached as

**Exhibit 1**.[3]  *Id.,* ¶ 32.  The letter states that a sign located "at or near milepost 510.5 in Phillips [*sic*] County is in violation of the provisions of the Montana Outdoor Advertising Act Part 1, Chapter 15, Title 75 Montana Codes Annotated (MCA)."  *Id.,* ¶ 33.  Contrary to the DOT's assertion, the Pinocci sign displayed by Pattison is located in Valley County, not Phillips County.  *Id.,* ¶ 34.

The letter also states that "Department personnel have identified a sign located on your property advertising a political candidate. Name of Candidate is Randy Pinnoci [*sic*] (Photo Attached)."  *Id.,* ¶ 35; **Exhibit 1**.  The DOT also alleges in the letter that Pattison's sign is "prohibited because it does not meet the requirements of Section 18.6.246(3), Administrative Rules of Montana, (ARM), which states in part that political signs must be removed within 14 days following the applicable election."[4]  *Id.,* ¶ 36.  The letter includes the following warning:

> As provided by 75-15-131, MCA, this letter is your notice of the department's intention to remove the sign. You have 5-days to remove the sign. If the sign is not removed by you, the department will start the process of having the sign removed.  The landowner and the sign owner are responsible for the costs of removal.

*Id.,* ¶ 37.

---

[3] The exhibits attached to this brief correspond to those attached to the Verified Complaint.

[4] The DOT got that part wrong, too. The durational limit for political signs is found in subsection (4) of Mont. Admin. R. 18.6.246, not subsection (3).

The DOT sent an identical letter dated March 7, 2023, to a business in Malta that is displaying a Pinocci sign. *Id.,* ¶ 38. The DOT sent a copy of the letter to Pinocci. *Id.,* ¶ 39; **Exhibit 2.**

Plaintiff Ronald V. Hepp has supported Pinocci's previous campaigns for public office. *Id.,* ¶ 40. Hepp has either displayed or distributed to supporters at least 300 Pinocci signs during the past decade on behalf of Pinocci's previous campaigns for public office. *Id.,* ¶ 41.

Hepp resides on property adjacent to Montana Highway 83 about 7.5 miles south of Seeley Lake, Montana. *Id.,* ¶ 42. Highway 83 is part of Montana's "Primary System"[5] and therefore subject to the Montana Outdoor Advertising Act. Mont. Code Ann. § 75-15-103(11). *Id.,* ¶ 43. Highway 83 is heavily traveled by Montanans, particularly during the summer months. *Id.,* ¶ 44. Hepp desires to display a Pinocci sign on his residential property that would be within 100 feet of Highway 83 to encourage Pinocci to continue running for public office as well as to increase Pinocci's name recognition among passersby. *Id.,* ¶ 45. Because of current Montana law governing political signs, and because he is concerned about the harassment being inflicted by the DOT upon other Pinocci supporters, Hepp will not display a Pinocci sign on his residential property without injunctive relief from this Court. *Id.,* ¶ 46.

---

[5] See <https://mdt.mt.gov/other/webdata/external/planning/maps/hwymap-system.pdf>

**ARGUMENT**

I.    MONTANA'S DURATIONAL LIMIT ON POLITICAL SIGNS
      DOES NOT SATISFY STRICT SCRUTINY

Speech concerning a public official like Randy Pinocci lies "at the core of speech protected by the First Amendment." *Sanders County Rep. Cent. Comm.,* 698 F.3d at 745.  It enjoys this protection because "[i]f the First Amendment has any force, it prohibits Congress from fining or jailing citizens, or associations of citizen, for simply engaging in political speech." *Citizens United v. FEC,* 558 U.S. 310, 349 (2010).

Content-based laws are "presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests." *Reed,* 576 U.S. at 163.  Determining whether or not a speech regulation is content-based requires a court to consider "whether a regulation of speech on its face draws distinctions based on the message of the speaker." *Id*. Such distinctions can include those "defining regulated speech by particular subject matter." *Id*.

An example is the municipal sign code reviewed by the Supreme Court in *Reed*.  The code applied different restrictions based on a sign's message. "Ideological Signs" could be displayed without time limits.  *Id.* at 159-60. "Political Signs" could be displayed up to 60 days before a primary election and up

to 15 days following a general election. *Id.* at 160. "Temporary Directional Signs Relating to a Qualifying Event," could be displayed no more than 12 hours before the "qualifying event" and no more than 1 hour afterward. *Id.* at 160-61.

The Supreme Court held that the sign code "singles out specific subject matter for different treatment," because "[i]deological messages are given more favorable treatment than messages concerning a political candidate, which are themselves given more favorable treatment than messages announcing an assembly of like-minded individuals." *Id.* The sign code was "a paradigmatic example of content-based discrimination," and, therefore, subject to strict scrutiny. *Id.* The code was not able to "evade strict scrutiny review simply because an event (*i.e.*, an election) is involved." *Id*. at 170.

The town argued that the code advanced the town's interests in aesthetics and traffic safety. *Id*. at 171. The Court disagreed – even if those interests were compelling, the code's distinctions were "hopelessly underinclusive." *Id*. The town failed to show how temporary directional signs were any "greater of an eyesore" than other types of signs. *Id*. at 172. Nor could it show that restricting such signs was "necessary to eliminate threats to traffic safety, but that limiting other types of signs is not." *Id*. Therefore, the town failed to prove that its sign code was narrowly tailored to further any compelling state interest. *Id*.

Several courts, both before and after *Reed*, have similarly invalidated

durational limits on political signs.  See, *e.g.*, *Marin v. Town of Southeast*, 136

F.Supp.3d 548, 552, 569-70 (S.D.N.Y. 2015) (invalidating ordinance that placed

less stringent durational limits on "For Sale" signs than on political signs);

*Beaulieu v. City of Alabaster,* 454 F.3d 1219, 1233 (11th Cir. 2006) ("under the

sign ordinance it is easier, cheaper, and faster for Beaulieu to post a real estate sign

than a campaign sign," thereby making ordinance "a content-based regulation that

fails strict scrutiny"); *Paine Bldg. Dept. v. Dworken & Bernstein Co., L.P.A*, 733

N.E.2d 1152, 1160 (Ohio 2000) (striking down ordinance imposing durational

limits on political signs); *Union City Bd. of Zoning Appeals v. Justice Outdoor

Displays, Inc*. 467 S.E.2d 875, 882 (Ga. 1996) (ordinance was content-based and

failed to survive strict scrutiny because it did not "place time limits on the period a

resident may post a sign advertising the sale of his or her house, but restricts to

seven weeks the period in which a sign bearing a political election message may be

displayed."); *Whitton v. City of Gladstone*, 54 F.3d 1400, 1409 (8th Cir. 1995)

(invalidating ordinance prohibiting political signs more than 30 days before

election and requiring sign removal within 7 days of election).

Montana's sign law suffers the same defect as the ones in *Reed* and the other

cases cited above.  The Montana Outdoor Advertising Act and DOT regulations

promulgated under the Act allow the posting of several types of signs without *any*

durational limits:

- Signs adverting the sale or lease of property upon which they are located, Mont. Code Ann. § 75-15-111(1)(b);
- Signs advertising activities conducted on the property upon which they are located, Mont. Code Ann. § 75-15-111(1)(c);
- Signs advertising the cultural exhibits of nonprofit historical or arts organizations, Mont. Code Ann. § 75-15-111(1)(f);
- Signs providing the names and meeting times of churches, service clubs, and youth organizations, Mont. Admin. R. 18.6.241,
- Signs by nonprofit groups recognizing the name of a sponsor or benefactor, Mont. Admin. R. 18.6.248.

If a sign promotes a political candidate or issue, however, it must be

removed within 14 days after an election. Mont. Admin. R. 18.6.246(4).

Montana's sign law is therefore content-based and subject to strict scrutiny.

As with the ordinance in *Reed*, the Montana Outdoor Advertising Act is

intended to promote safety and aesthetics.  Mont. Code Ann. § 75-15-102.  Neither

interest is a *compelling* interest.  *Willson v. City of Bel-Nor*, 924 F.3d 995, 1001

(8th Cir. 2019); *Central Radio Co. v. City of Norfolk*, 811 F.3d 625, 633 (4th Cir.

2016) ("[a]lthough interests in aesthetics and traffic safety may be substantial

government goals … neither we nor the Supreme Court have ever held that they

constitute compelling government interests.").  This fact is sufficient, standing

alone, to require the invalidation of Montana's durational limit on political signs.

11

Moreover, Montana's durational limits on political signs "fail[s] as hopelessly underinclusive." *Reed*, 576 U.S. at 171.  The political signs Defendant seeks to remove from Pattison's property "are no greater eyesore" than the many other signs that may be displayed under Montana law.  *Reed*, 576 U.S at 172.  Nor can Defendant possibly show that "limiting [political signs] is necessary to eliminate threats to traffic safety, but that limiting other types of signs is not."  *Id.*

Montana's sign law is content-based and incapable of surviving strict scrutiny.  Therefore, it violates Plaintiffs' right to free speech under the First Amendment.

## II.   MONTANA'S DURATIONAL LIMIT ON POLITICAL SIGNS IS UNCONSTITUTIONALLY VAGUE

Montana's sign law tells landowners when they must *remove* political signs, but not when they may *begin* posting them.  It thus fails to give fair notice of conduct that is forbidden or required, thereby "contraven[ing] two bedrock constitutional norms: (1) regulated parties should know what is required of them so they may act accordingly and (2) laws must provide proper precision and guidance to ensure those enforcing the law do not act in an arbitrary or discriminatory way." *Butcher v. Knudsen*, 38 F.4th 1163, 1168 (9th Cir. 2022).  And because the sign law implicates First Amendment rights, "the void-for-vagueness doctrine has

special purchase," and "vagueness scrutiny is more stringent." *Id.* at 1169.  This is

because vague speech regulations inevitably result in self-censorship:

> [W]hen a vague statute abuts upon sensitive areas of basic First
> Amendment freedoms, it operates to inhibit the exercise of those
> freedoms. Uncertain meanings inevitably lead citizens to steer far
> wider of the unlawful zone than if the boundaries of the forbidden
> areas were clearly marked.

*Id.*, quoting *Grayned v. City of Rockford*, 408 U.S. 104, 109 (1972).

Montana's sign law requires landowners to remove political signs within 14

days after an election.  Mont. Admin. R. 18.6.246(4).  But it does not tell them

when they may *begin* displaying political signs.  Thus, landowners have no idea

how soon before a primary election they may begin to post political signs.  And, 14

days after the primary election, they cannot know whether they are allowed to keep

their signs up or, instead, are required to take them down before being allowed to

put them back up for the general election at some unknown date in the future.

Montana law regulating political signs is vague to the point of absurdity

because it fails to provide any notice whatsoever as to when landowners may post

political signs.  Further, it invites arbitrary and discriminatory enforcement by

Defendant and his agents.  Montana's durational limits on political signs should,

therefore, be invalidated for vagueness.

III.   MONTANA'S SIGN LAW DENIES EQUAL PROTECTION CLAUSE TO
       PLAINTIFFS

Under the Equal Protection Clause of the Fourteenth Amendment, no state

shall "deny to any person within its jurisdiction the equal protection of the laws."

Equal protection claims require plaintiffs to show that a "class that is similarly

situated has been treated disparately." *Roy* v. *Barr,* 960 F.3d 1175, 1181 (9th Cir.

2020).  In reviewing equal protection claims, courts "identify the government's

classification of groups in the statute." *Id.*  After identifying a "classified group,"

courts search for "a comparative group composed of individuals who are similarly

situated to those in the classified group in respects that are relevant to the

government's challenged policy." *Id.*  If the groups are similarly situated, courts

then apply the appropriate level of scrutiny.  Classifications that are "based on race

or national origin, as well as classifications affecting fundamental rights, are given

the most exacting scrutiny." *Clark* v. *Jeter,* 486 U.S. 456, 461 (1988); *ACLU of

Nevada v. City of Las Vegas,* 466 F.3d 784, 799 (9th Cir. 2006).  Fundamental

rights include the right to discuss candidates. *Eu v. San Francisco County

Democratic Cent. Comm.,* 489 U.S. 214, 223 (1989) ("the First Amendment has its

fullest and most urgent application to speech uttered during a campaign for

political office"); *Montana Citizens for Right to Work v. Mangan*, 580 F.Supp.3d

911, 923 (D. Mont. 2022) ("the First Amendment right to free speech is a

fundamental right….").  Exacting scrutiny requires the law at issue to be "finely

tailored to serve the substantial interests of the [State]."  *ACLU,* 466 F.3d at 799.

Defendant classifies persons who display signs based on the signs'

messages.  Those displaying non-political messages may do so indefinitely.  Mont.

Code Ann. § 75-15-111(1); Mont. Admin. R. 18.6.241; Mont. Admin. R. 18.6.248.

Those displaying political messages, however, must remove them within 14 days

after an election.  Mont. Admin. R. 18.6.241(4).

These two groups are similarly situated other than for the content of the

speech displayed on their signs, thereby requiring this Court to apply strict

scrutiny.  As shown previously, Defendant's classification of landowners based

upon the messages displayed on their signs is not narrowly tailored to achieve any

compelling state interest.[6]  Montana's sign law, therefore, violates Plaintiffs' right

to equal protection.

IV.  PLAINTIFFS SATISFY THE *WINTER* REQUIREMENTS FOR A
     PRELIMINARY INJUNCTION

To obtain injunctive relief, a plaintiff must show (1) a likelihood of success

on the merits, (2) a likelihood of irreparable harm if injunctive relief is not granted,

(3) the balance of equities tips in his or her favor, and (4) an injunction is in the

---

[6] See pp. 11-12, *supra*.

public interest.  *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).
As shown below, Plaintiffs can satisfy each of these requirements.

### A.  Plaintiffs Are Likely to Succeed on the Merits

Plaintiffs have previously shown that Montana's sign law violates their First
Amendment right to free speech and Fourteenth Amendment right to equal
protection.[7]  They are therefore likely to succeed on the merits.

At the very least, Plaintiffs satisfy the alternate "sliding scale" approach
applied by the Ninth Circuit to preliminary injunction motions.  *Alliance for the
Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011).  Under this rule,
Plaintiffs are entitled to injunctive relief because they have raised "serious
questions going to the merits" along with showing (as described below) that the
balance of the hardships tips sharply in their favor and that the other two *Winter*
factors favor them.  *Id.* at 1135.

### B.   Plaintiffs Will Suffer Irreparable Harm if Relief is not Granted

Although Plaintiffs have the burden of demonstrating irreparable harm, such
harm is "relatively easy to establish in a First Amendment case" and Plaintiffs
"need only demonstrate the existence of a colorable First Amendment claim."
*California Chamber of Commerce v. Council for Educ. and Research on Toxins,*

---

[7] See pp. 8-13 *supra*.

29 F.4th 468, 482 (9th Cir. 2022). The Supreme Court has held that "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373-74 (1976). Such "harm is particularly irreparable where, as here, a plaintiff seeks to engage in political speech, as timing is of the essence in politics and delay of even a day or two may be intolerable." *Klein v. City of San Clemente*, 584 F.3d 1196, 1208 (9th Cir. 2009).

The 2024 congressional race in eastern Montana began the day after Election Day on November 8, 2022. Plaintiffs recognize this reality and desire to act on it. Defendant's attempts to enforce Montana's unconstitutional restrictions on political signs are chilling the protected speech of citizens like Plaintiff Hepp. Each day that his speech is chilled is a day that he can never get back. Plaintiffs thus easily satisfy the irreparable harm requirement.

### C.  The Balance of Equities Tips Sharply in Plaintiffs' Favor

If Plaintiffs are denied injunctive relief, their First Amendment rights will continue being violated. On the other hand, there is no detriment to Defendant from enjoining an unconstitutional act. *Sanders County Republican Cent. Comm. v. Bullock*, 698 F.3d at 749. This factor sharply tips in Plaintiffs' favor.

D. Enjoining the Statute is in the Public Interest

First Amendment rights are ones that, if protected, will unquestionably advance the public interest. *Associated Press v. Otter*, 682 F.3d 821, 826 (9th Cir. 2012) ("Courts considering requests for preliminary injunctions have consistently recognized the significant public interest in upholding First Amendment principles."); *Joelner v. Washington Park*, 378 F.3d 613, 620 (7th Cir. 2004) ("it is always in the public interest to protect First Amendment liberties"). This factor favors granting injunctive relief as well.

V.   PLAINTIFFS SHOULD NOT BE REQUIRED TO POST AN
     INJUNCTION BOND

A party is normally required to post a bond as a condition for issuance of a preliminary injunction. Fed. R. Civ. P. 65(c). Though the text of Rule 65(c) suggests that an injunction bond is necessary in all cases, the Ninth Circuit has held that the rule "invests the district court with discretion as to the amount of security required, *if any*." *Johnson v. Courturier*, 572 F.3d 1067, 1086 (9th Cir. 2009) (emphasis added). A court may waive the bond requirement in Rule 65(c) "when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct." *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003). Courts routinely grant injunctive relief in First Amendment cases without requiring bonds because enjoining government censorship rarely, if ever, results in harm.

18

See, *e.g. Flores v. Bennett,* 2022 WL 9459604, *17 (E.D. Cal. Oct 14, 2022) (no bond required in case involving college students' First Amendment challenge to college's restriction on posting flyers); *United Food and Commercial Worker Local 99 v. Brewer*, 817 F.Supp.2d 1118, 1128 (D. Ariz. 2011) (no bond required by the court because "[t]here is no realistic likelihood that Defendants will be harmed by being enjoined from enforcing a law that constitutes viewpoint discrimination in violation of the First Amendment on its face."); *Bible Club v. Placentia-Yorba Linda Sch. Dist.*, 573 F.Supp.2d 1291, 1302 n.6 (C.D. Cal 2008) ("[g]iven that this case involves the probable violation of the Bible Club's First Amendment rights, and that the damages to the District of issuing this injunction seem minimal, if they exist at all, the Bible Club need not post a bond.")

If the Court grants the injunctive relief requested by Plaintiffs, Defendant would be enjoined from attempting to remove political signs from private property. Defendant would not suffer any financial harm whatsoever. Indeed, his agency may well save money by not removing signs from Plaintiffs' property. The Court should, therefore, refrain from requiring a bond from Plaintiffs.

## **CONCLUSION**

For all of the foregoing reasons, Plaintiffs respectfully request that this Court grant their motion and issue a preliminary injunction restraining and enjoining

Defendant and all of his officers, agents, servants, employees, and persons in active concert with any of them from enforcing durational limits on political signs.

DATED: April 4, 2023          Respectfully submitted,

                              /s/ Matthew G. Monforton
                              Matthew G. Monforton
                              Attorney for Plaintiffs

## <u>CERTIFICATE OF COMPLIANCE PURSUANT TO L. R. 7.1(d)(2)(E)</u>

I hereby certify that this document, excluding caption, tables, and certificate of compliance, contains 5438 words, as determined by the word processing software used to prepare this document, specifically Microsoft Word 2007.

DATED: April 4, 2023          Respectfully submitted,

<u>/s/ Matthew G. Monforton</u>
Matthew G. Monforton
Attorney for Plaintiffs