IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| RANDY PINOCCI, JEFFREY PATTISON, and RONALD V. HEPP,<br><br>Plaintiffs,<br><br>vs.<br><br>LARRY FLYNN, in his official capacity as Interim Director of the Montana Department of Transportation,<br><br>Defendant. | CV 23–21–H–DLC<br><br><br>ORDER |

Plaintiffs Randy Pinocci, Jeffrey Pattison, and Ronald V. Hepp have moved the Court for an order issuing a preliminary injunction under Fed. R. Civ. P. 65(a) to enjoin Defendant Larry Flynn from enforcing durational limits on political signs imposed by Mont. Admin. R. 18.6.246(4). (Doc. 3.) The Court held a hearing on the motion on April 4, 2024. (Doc. 35.) For the reasons herein, the motion for preliminary injunction is granted.

**FACTUAL BACKGROUND**[1]

Plaintiff Pinocci is a Montana politician currently serving as a Montana Public Service Commissioner. Plaintiffs Pattison and Hepp are supporters of

---

[1] A more detailed factual background can be found in the Court's January 22, 2024, Order (Doc. 23).

1

Pinocci who wish to post signs on their property in support of Pinocci but cannot do so without violating Montana law.  (Doc. 4 at 7.)  Defendant Flynn is the Interim Director of the Montana Department of Transportation ("MDT").[2]

The Montana Outdoor Advertising Act ("the Act"), Mont. Code Ann. § 75-15-101 et seq., governs the display of signs near highways and interstates.  The Act generally prohibits signage within 660 feet of a right-of-way or visible from an interstate or primary system unless it is within one of the categories of exceptions: signs advertising the sale or lease of a property upon which the sign is located; signs advertising activities conducted on the property upon which the sign is located; signs that are on commercially-zoned land; signs that are on land which is not zoned but is commercial or industrial in nature; signs advertising cultural exhibits of nonprofit historical or arts organizations; and signs that are "consistent with the policy of this state" and with national rules and regulations.  Mont. Code Ann. § 75-15-111(1) (2023).  The Act does not speak specifically to political signage; however, it authorizes MDT to adopt rules controlling the erection and maintenance of other outdoor advertising.  *Id.* § 75-15-121.

Pursuant to this authority, MDT has enacted rules allowing for the display of signs providing the names and meeting times of churches, service clubs, and youth

---

[2] Plaintiffs initially brought suit against Malcolm "Mack" Long, former Director of the Montana Department of Transportation, in his official capacity.  However, Long is no longer serving in this role.  Larry Flynn is the Interim Director of the Montana Department of Transportation, and as such, Flynn has been substituted as the Defendant in the above-captioned matter pursuant to Fed. R. Civ. P. 25.

2

organizations, Mont. Admin. R. 18.6.241, and signs by nonprofit groups recognizing the name of a sponsor or benefactor, Mont. Admin. R. 18.6.248. MDT also promulgated rules governing political signage. *See* Mont. Admin. R. 18.6.246. Unlike other rules codified by MDT or in the Act itself, which have no durational requirements, the rule governing political signage imposes a durational limit: "signs must be removed within 14 days following the applicable election." Mont. Admin. R. 18.6.246(4).

A failure to remove political signage within this time frame triggers administrative proceedings through MDT. *Id.* It also subjects the landowner to penalties under the Act, which authorizes the department to enter the land in order to remove the unlawful sign. Mont. Code Ann. § 75-15-131. The landowners are additionally subject to liability under § 75-15-133, which states that all non-conforming outdoor advertising is a public nuisance, and § 75-15-134, which states that any person violating the Act is guilty of a misdemeanor.

**PROCEDURAL BACKGROUND**

Plaintiffs brought this action against Malcolm "Mack" Long in his official capacity as Director MDT. Plaintiffs alleged that the durational limit for political signs under Mont. Admin. R. 18.6.246(4), as promulgated and enforced by MDT, violates the First and Fourteenth Amendments to the United States Constitution and Article II, § 7 of the Montana Constitution. (Doc. 1 at 8–11.)

Early in litigation, Long filed a motion to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a claim, in which he asserted that he was immune from suit in federal court under Eleventh Amendment sovereign immunity and because he is not a "person" within the meaning of 42 U.S.C. § 1983.  (Doc. 10.)  Long also filed a motion to dismiss under Fed. R. Civ. P. 12(b)(1), in which he claimed that this Court did not have jurisdiction over the dispute because there was no actual case or controversy sufficient for standing.  (Doc. 19.)

On January 22, 2024, the Court rejected Long's argument that he was immune from suit under the Eleventh Amendment as to the alleged violations of the First and Fourteenth Amendments but granted Long's motion to dismiss as to the alleged violation of the Montana Constitution.   (Doc. 23 at 8, 12.)  The Court also denied the motion to dismiss under Fed. R. Civ. P. 12(b)(1) and set a hearing on the pending motion for preliminary injunction.  (*Id.* at 22–23.)

On February 1, 2024, Long filed a motion for settlement conference and continuation of the preliminary injunction hearing. (Doc. 24.)  The Court granted the motion and referred the matter to Magistrate Judge John Johnston for the sole purpose of conducting a settlement conference.  (Doc. 26.)  On March 8, 2024, Judge Johnston vacated the scheduled settlement conference based on his finding that mediation would be futile.  (Doc. 31.)  On March 11, 2024, the Court reset the hearing on the preliminary injunction for April 4, 2024.

On April 2, 2024, Plaintiffs filed a notice of supplemental authority informing the Court that on April 1, 2024, the MDT held public comment on a proposed revision to Mont. Admin. R. 18.6.246.  (Doc. 33.)  The proposed revision would remove the durational limits on political signage.  At the hearing, counsel for Defendant explained that, if adopted, the revised administrative rule will take effect on May 11, 2024.

Also on April 2, 2024, Pinocci filed an affidavit notifying the Court that on March 11, 2024, he registered with the Secretary of State as a candidate for Republican nomination for Lieutenant Governor of the State of Montana.  (Doc. 34.)  Pinocci declared that his "efforts to advance [his] candidacy include obtaining the permission of private landowners to display campaign signs that are within 660 feet of major highways in Montana" and that "[r]egardless of the results of this election cycle, [he] intend[s] to run in the future for public office and will continue seeking to display campaign signs within 660 feet of major highways in Montana as [he has] in all of [his] previous campaigns."  (*Id.* at 2.)

## LEGAL STANDARD

"A preliminary injunction is an extraordinary remedy never awarded as of right."  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (citation omitted).  Generally, a party seeking a preliminary injunction must establish that: (1) it is likely to succeed on the merits; (2) it is likely to suffer irreparable harm in

the absence of preliminary relief; (3) the balance of equities tips in its favor; and (4) an injunction is in the public interest. *Winter*, 555 U.S. at 20 (citations omitted). However, "serious questions going to the merits and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).

## ANALYSIS

### I. Justiciability

Plaintiffs argue that, if adopted, the proposed revised rule would not render this matter moot for two reasons. First, because "Defendant seeks to penalize Plaintiffs not only for violating Montana's sign *regulation*, but also Montana's sign *statute*." (Doc. 33 at 2.) Second, Plaintiffs argue that the repeal of a law by an arm of the executive branch, such as MDT, does not moot a pending challenge to the law. (*Id.*)

A case becomes moot "'when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome.'" *Animal Legal Def. Fund v. U.S. Dep't of Agric.*, 933 F.3d 1088, 1092 (9th Cir. 2019) (quoting *Powell v. McCormack*, 395 U.S. 486, 496 (1969)). "'The burden of demonstrating mootness is a heavy one.'" *Forest Guardians v. U.S. Forest Serv.*, 329 F.3d 1089,

1095 (9th Cir. 2003) (quoting *L.A. Cnty. v. Davis*, 440 U.S. 625, 631 (1979)). "Voluntary cessation of challenged conduct moots a case . . . only if it is absolutely clear that the alleged wrongful behavior could not reasonably be expected to recur." *Adarand Constructors, Inc. v. Slater*, 528 U.S. 216, 222 (2000).

The revised rule here has not been formalized nor become enforceable. Even if it had, MDT could revert back to the old rule at any time. Likewise, Defendant has not admitted that the regulation is unconstitutional. At the hearing, the Court inquired whether the government conceded that the durational limits were unconstitutional. Counsel for Defendant responded, "Not necessarily."

Therefore, it is not "absolutely clear that the alleged wrongful behavior could not be reasonably expected to recur." Plaintiffs' claims are justiciable.

## II. Preliminary Injunction

Plaintiffs argue that the Court should preliminarily enjoin enforcement of the durational limits on political signage imposed by Mont. Admin. R. 18.6.246(4) for three reasons: because it violates their First Amendment right to free speech, (Doc. 4 at 13–17); because the language of the durational rule is unconstitutionally vague, (*id.* at 17–19); and because the durational limits on political signs violates Plaintiffs' rights to equal protection, (*id.* at 19–20). Because the Court finds that that the *Winter* factors favor issuance of a preliminary injunction based on the First

Amendment claim, it will forego analysis of the vagueness and equal protection claims.

### A. Likelihood of Success on the Merits

"The First Amendment 'has its fullest and most urgent application to speech uttered during a campaign for political office.'" *Sanders Cnty. Republican Cent. Comm. v. Bullock*, 698 F.3d 741, 744–45 (9th Cir. 2012) (quoting *Citizens United v. FEC*, 558 U.S. 310, 339 (2010).  As such, "political speech—including the endorsement of candidates for office—is at the core of speech protected by the First Amendment." *Id.* at 745.  "Content-based restrictions are presumptively unconstitutional," *United Bhd. of Carpenters v. NLRB*, 540 F.3d 957, 964–65 (9th Cir. 2008), and "can only stand if they survive strict scrutiny, 'which requires the Government to prove that the restriction furthers a compelling interest and is narrowly tailored to achieve that interest.'" *Reed v. Town of Gilbert*, 576 U.S. 155, 171 (2015) (quoting *Ariz. Free Enterprise Club's Freedom Club PAC v. Bennett*, 564 U.S. 721, 734 (2011)).  "When seeking a preliminary injunction in the First Amendment context, the moving party bears the initial burden of making a colorable claim that its First Amendment rights have been infringed, or are threatened with infringement." *Sanders Cnty. Republican Cent. Comm.*, 698 F.3d at 744.  If the moving party is successful, the burden then shifts to the regulating

authority who must "prove that the restriction is justified without reference to the content of the speech." *United Bhd. Of Carpenters*, 540 F.3d at 965.

Plaintiffs argue that they are likely to succeed on the merits of this matter because Montana's durational limit on political signs is a content-based restriction on speech, and the restriction cannot pass strict scrutiny. (Doc. 4 at 13–17.) At the hearing, counsel for Defendant agreed that the administrative rule places content-based restrictions on signage. Somewhat paradoxically, counsel then went on to argue that intermediate scrutiny should apply because the administrative rule is an "on premise/off premise regulation" that is content-neutral. However, even if the Court were to determine that intermediate scrutiny was the correct standard of review, Defendant's admission that it "[does not] have an interest in the durational limits" imposed by the administrative rule requires the Court to find that the language is unconstitutional. *See City of Austin v. Reagan Nat'l Advert. of Austin, LLC*, 142 S. Ct. 1464, 1475–76 (2022) ("[T]o survive intermediate scrutiny, a restriction on speech or expression must be 'narrowly tailored to serve a significant governmental interest.'" (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989))).

Plaintiffs have met the burden of "making a colorable claim that [their] First Amendment rights have been infringed or are threatened with infringement." *Sanders Cnty. Republican Cent. Comm.*, 698 F.3d at 744.  However, Flynn has not met his burden of establishing that "the restriction is justified without reference to the content of the speech."  *United Bhd. of Carpenters*, 540 F.3d at 965.  Indeed, Flynn is unlikely to prove that the durational limits on political signage are narrowly tailored to serve a significant governmental interest, let alone, narrowly tailored to a compelling governmental interest.  Accordingly, the Court finds that Plaintiffs are likely to succeed on the merits as to their First Amendment claim.

### B. Irreparable Injury

Plaintiffs assert that they have experienced irreparable harm by nature of their chilled political speech.  (Doc. 4 at 22.)  At the hearing, counsel for Defendant argued that Director Long and MDT "immediately and voluntarily suspended enforcement of the durational limits included in the administrative rule" and therefore, Defendant has "made it extremely clear to Plaintiffs that they can continue to display their signs without fear of enforcement of the durational limits."  Counsel for Defendant further contested the necessity of a preliminary injunction because the revised rule—expected to take effect May 11, 2024—eliminates the durational restrictions on political signage.

Be that as it may, the Supreme Court and Ninth Circuit have repeatedly held that "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373–74 (1976); *see also Klein v. City of San Clemente*, 584 F.3d 1196, 1207–08 (9th Cir. 2009). In light of this clear rule, irreparable harm is "relatively easy to establish" so long as Plaintiffs "demonstrate the existence of a colorable First Amendment claim." *Cal. Chamber of Commerce v. Council for Educ. & Rsch. on Toxins*, 29 F.4th 468, 482 (9th Cir. 2022), *cert. denied*, 143 S. Ct. 1749 (2023). "The harm is particularly irreparable where, as here, a plaintiff seeks to engage in political speech." *Klein*, 584 F.3d at 1208; *see also Kishore v. Newsom*, No. CV 20-5859-DMG, 2020 WL 6555041, at *5 (C.D. Cal. July 6, 2020) (comparing the irreparable harm in *Klein* and other cases that "concern ongoing, immediate, or past suppression of First Amendment activity" with a potential ballot appearance prohibition, which was neither ongoing nor imminent); *Tracy Rifle & Pistol LLC v. Harris*, 118 F. Supp. 3d 1182, 1192 (E.D. Cal. July 15, 2015), *aff'd*, 637 F. App'x 401 (9th Cir. 2016) ("'[T]he assertion of First Amendment rights does not automatically require a finding of irreparable injury, thus entitling a plaintiff to a preliminary injunction if he shows a likelihood of success on the merits.' It is 'purposeful unconstitutional suppression of speech [that] constitutes irreparable harm for preliminary injunction purposes.' It is the 'direct penalization, as opposed

to incidental inhibition, of First Amendment rights [that] constitutes irreparable injury.'" (internal citations omitted)).

Though a preliminary injunction may be of little functionality as long as Flynn is holding up his end of the promise, Plaintiffs have still presented a prohibition on protected First Amendment political speech that constitutes irreparable harm. Therefore, the Court finds that this factor weighs in favor of a preliminary injunction.

### C. Balance of Equities and Public Interest

In deciding whether to grant a preliminary injunction, the Court "'must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief.'" *Winter*, 555 U.S. at 24 (quoting *Amoco Production Co. v. Gambell*, 480 U.S. 531, 542 (1987)). The Court must also determine whether entry of a preliminary injunction promotes the public interest. *Id.* at 20.

Here, Plaintiffs allege an active prohibition and a chilling effect on their First Amendment right to political speech. If injunctive relief is not granted, "their First Amendment rights will continue being violated." (Doc. 4 at 22.)

Flynn argues only that "a preliminary injunction would be excessive and unreasonable under present circumstances." (Doc. 12 at 7.) As previously noted, however, Flynn's voluntary cessation is not sufficient to ensure that Plaintiffs will

12

not be subject to prosecution for the same behavior in the future. Considering that Flynn has already suspended the behavior at issue, the hardship imposed by issuing an injunction is minimal. Further, there can be "no legally cognizable benefit from being permitted to further enforce an unconstitutional limit on political speech." *Sanders Cnty. Republican Cent. Comm*, 698 F.3d at 749. Especially considering the high deference afforded to First Amendment claims, the Court finds that the balances of equities favors granting injunctive relief.

As for public interest, "[c]ourts . . . have consistently recognized the significant public interest in upholding First Amendment principles." *Associated Press v. Otter*, 682 F.3d 821, 826 (9th Cir. 2012); *see also Cox v. McLean*, 49 F. Supp. 3d 765, 773 (D. Mont. Sept. 30, 2014). On the other side, "constitutional violations . . . never serve the public interest." *Imperial Sovereign Ct. of Mont. v. Knudsen*, No. CV 23-50-BU-BMM, 2023 WL 4847007, at *7 (D. Mont. July 28, 2023). Flynn has not presented any suggestion that the prohibitory law serves the public interest; instead, he argues that "there is no defensible rationale" to justify injunctive relief considering the voluntary suspension. (Doc. 12 at 7–8.) As such, entry of a preliminary injunction promotes the public interest.

### D. Conclusion

Plaintiffs have established that they are likely to succeed on the merits of their First Amendment claim; (2) that they are likely to suffer irreparable harm in

the absence of preliminary relief; (3) that the balance of equities tips in their favor; and (4) that an injunction is in the public interest. As such, the Court finds that it must preliminarily enjoin enforcement of the durational limits on political signage imposed by Mont. Admin. R. 18.6.246(4).

### III. Injunction Bond

Fed. R. Civ. P. 65(c) provides that "[t]he court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained. However, the Ninth Circuit has held that a "district court may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct." *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003).

Plaintiffs argue that Defendant would not suffer any financial harm as a result of an injunction. (Doc. 4 at 24.) Defendant, for his part, argues that the bond would protect Director Flynn and MDT from damages resulting from the effect of the injunction itself. (Doc. 12 at 9.) However, Defendant fails to articulate what damages he would suffer as a result of an injunction, and the Court is unable to ascertain how Defendant could suffer any damage. As such, the Court

finds an injunction bond is unnecessary as "there is no realistic likelihood of harm to the [D]efendant from enjoining his conduct." *Jorgenson*, 320 F.3d at 919.

## CONCLUSION

Neither Flynn's promise to forego enforcing the durational limits on political signage, nor the revision of the challenged administrative rule renders the current controversy moot. The Court finds that Plaintiffs are likely to succeed on the merits of their First Amendment Freedom of Speech claim. The Court further finds that, absent a preliminary injunction, Plaintiffs are likely to suffer irreparable harm. Likewise, the balance of equities and public interest weigh in favor of a preliminary injunction. As such, the Court preliminarily enjoins Defendant from enforcing the durational limits of Mont. Admin. R. 18.6.246(4). Finally, the Court finds that this preliminary injunction presents no realistic likelihood of harm to Defendant, and therefore an injunction bond is not necessary.

Accordingly, IT IS ORDERED that the motion for preliminary injunction (Doc. 3) is GRANTED. Defendant is enjoined from enforcing Mont. Admin. R.18.6.246(4).

DATED this 8th day of April, 2024.

_____
Dana L. Christensen, District Judge
United States District Court